529 So.2d 1372 (1988)
SUCCESSION OF Adolphe SORAPURU
v.
HUMBLE OIL & REFINING CO., et al.
No. 87-CA-826.
Court of Appeal of Louisiana, Fifth Circuit.
July 26, 1988.
*1373 Robert E. Lee, New Orleans, for plaintiff-appellant.
M. Hampton Carver, William H. Bennett, III, Exxon Co., U.S.A., New Orleans, for defendants-appellees.
Before CHEHARDY, KLIEBERT and GAUDIN, JJ.
GAUDIN, Judge.
This is an appeal by succession representatives from a district court judgment maintaining a peremptory exception of no right of action. The succession representatives had sought title to property previously owned by Adolphe Sorapuru. Mr. Sorapuru, however, had lost the property in 1850. The record supports the judgment and we affirm it.
In 1841, Mr. Sorapuru paid $222.50 for 178 acres in Section 91, Township 12 South, Range 19 East of the Louisiana Meridian in St. Charles Parish. Payment was to the United States government, which entitled Mr. Sorapuru to receive a patent from the Commissioner of the General Land Office. The patent was not applied for.
On April 20, 1842, Mr. Sorapuru mortgaged the property and in February, 1850, the mortgage-holder filed suit for nonpayment. The subject property was legally seized and sold to Michael T. Andry on April 11, 1850.
On July 31, 1952, Louis A. Lanaux applied for a patent and one was issued in the name of Adolphe Sorapuru. Mr. Lanaux's application was based on title derived from Mr. Sorapuru and Mr. Andry.
On July 13, 1983, the Succession of Adolphe Sorapuru, through its administrators, filed the instant petitory action against the heirs of Mr. Lanaux. The administrators alleged that title to the property remained in the United States government until the patent was issued in 1953. The administrators acknowledged that the property had been seized and sold in 1851[1] but Mr. Sorapuru was then not the true and rightful owner as he had never applied for a patent.
The administrators later filed a supplemental and amending petition, contending that Mr. Sorapuru and his heirs have in fact owned the property since 1841.
The succession administrators claim that there are serious defects in the Lanauxes' title; however, one who brings a petitory suit must proceed on the strength of his claim to title, not on the alleged flaws in the defendant's title.
LSA-C.C.P. art. 3653 states:
"To obtain a judgment recognizing his ownership of immovable property or real right therein, the plaintiff in a petitory action shall:
"(1) Prove that he has acquired ownership from a previous owner or by acquisitive prescription, if the court finds that *1374 the defendant is in possession thereof; or
"(2) Prove a better title thereto than the defendant, if the court finds that the latter is not in possession thereof."
After the no right of exception was argued, the trial judge assigned these reasons:
"The plaintiff in a petitory action must recover on the strength of his own title and cannot recover on the weakness of the defendant's title. The title of the defendant in a petitory action is not even put at issue until the plaintiff proves a title in himself. La.Code Civ.P. art. 3653; La.Civ.Code art. 531; Pure Oil Co. v. Skinner, 294 So.2d 797 (La.1974); Mansfield Hardwood Lumber Co. v. Butler, 234 La. 322, 99 So.2d 129 (1958).
"Plaintiffs in this petitory action are claiming title to the property described above as heirs of Adolphe Sorapuru. Adolphe Sorapuru mortgaged this property in 1842; the mortgage was foreclosed in 1850; and the property was sold at a judicial sale in 1850 in enforcement of the mortgage. Because Adolphe Sorapuru was divested of title to the property during his lifetime, the patent issued in 1953 in the name of Adolphe Sorapuru did not inure to the benefit of his heirs but to the benefit of the party (and his descendants in title) who purchased the property at the foreclosure sale in 1850. 43 U.S.C. § 1152 (repealed 1976); Landes v. Brant, 51 U.S. (10 How.) 348, 13 L.Ed. 449 (1845); Cherami v. Cantrelle, 174 La. 995, 142 So. 150 (1932)."
Two documents in evidence, Exhibits "A" and "B", did give Mr. Sorapuru legal title in 1842. Exhibit "A" is the receipt for $222.50, payment in full for the 178 acres, while Exhibit "B" is the deed saying:
"It is hereby certified that, in pursuance of law, Adolphe Sorapuru ... on this day purchased of the Register of this Office Section No. 91 ...
"Now, therefore, be it known, that, on presentation of this Certificate to the Commissioner of the General Land Office, the said Adolphe Sorapuru shall be entitled to receive a patent for the land above described..."
Although Sorapuru did not present the certificate for a patent, the trial judge obviously found that Mr. Sorapuru had acquired legal title and that consequently he could legally mortgageand legally lose the property during his lifetime, thereby divesting his heirs of standing in a subsequent petitory action.
On appeal, the succession administrators rely mainly on Noel v. Noel, 244 So.2d 73 (La.App. 1st Cir.1971). This was a partition proceeding in which the district judge erroneously maintained an exception of no right of action. Any holding in this case, however, is inapplicable to the instant petitory action wherein the succession administrators were and apparently are unable to establish a claim for Mr. Sorapuru's heirs because of the 1842 mortgage and 1850 forced sale.
Appellants have not shown that either Mr. Sorapuru's 1841 acquisition or the 1850 sale was invalid. We have examined the mortgage, the mortgage-holder's suit, the sale and all documents connected therewith, and all seems to be in order.
The property was mortgaged to the Consolidated Association of the Planters of Louisiana. The mortgage was in French, but an English translation was provided.
Finding that Mr. Sorapuru had divested himself of any ownership in the subject property while he was living, the trial judge correctly maintained the exception of no right of action and dismissed the petitory suit filed by the succession administrators.
We affirm the judgment dated June 29, 1987, with appellants to bear costs.
AFFIRMED.
NOTES
[1] Property was actually seized and sold in 1850, not 1851.